**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kevin Michael WELLS, a/k/a Charles Rainey, a/k/a Bernard Taylor, a/k/a Barnard Tyler, a/k/a Christopher Westbrooks, a/k/a Zermee Pryor, a/k/a McCullen Pitts, Defendant–Appellant.**

No. 95–5823.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 24, 1996.

Decided Oct. 25, 1996.

---

**ARGUED:** Timothy Joseph Sullivan, Sullivan & Sullivan, College Park, MD, for Defendant–Appellant. Maury S. Epner, Assistant United States Attorney, Greenbelt, MD, for Plaintiff–Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Sandra Wilkinson, Assistant United States Attorney, Greenbelt, MD, for Plaintiff–Appellee.

Before WILKINSON, Chief Judge, and WILKINS and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Chief Judge WILKINSON and Judge WILLIAMS joined.

## OPINION

WILKINS, Circuit Judge:

Kevin Michael Wells pled guilty to unlawful possession of a firearm by a convicted felon, see 18 U.S.C.A. § 922(g) (West Supp. 1996), reserving his right to challenge on appeal various decisions of the district court. He now maintains that the district court erred in refusing to suppress the firearm, arguing that the law enforcement agent who seized the weapon during a search of Wells' apartment had no lawful right of access to it and that the incriminating nature of the firearm was not immediately apparent. Wells also contends that because Congress exceeded its authority under the Commerce Clause in enacting § 922(g), his conviction under that statute cannot stand. We affirm.

### I.

Agents of the United States Secret Service executed a search of Wells' apartment pursuant to a warrant authorizing a search for evidence relating to federal bank fraud offenses. After the agents entered the apartment, they handcuffed Wells and began searching for the items described in the warrant. While doing so, one of the agents discovered a loaded firearm on the headboard of Wells' bed. Following established Secret Service procedures, the agent unloaded the weapon and replaced it on the headboard; he also advised the other officers in the apartment that he had located a weapon. Upon learning of this discovery, the agent responsible for supervising the search ordered the firearm seized as evidence. Although the warrant did not list weapons among the items to be seized as evidence of bank fraud, a criminal records review by the supervising agent prior to the search indicated that Wells had a prior felony conviction; the weapon, therefore, was evidence of a violation of § 922(g).

Wells subsequently was indicted on one count of violating 18 U.S.C.A. § 922(g). He thereafter filed a motion requesting that the district court suppress the firearm, arguing that the seizure of the weapon was improper since firearms had not been specified in the warrant and seizure of the weapon could not be justified under the plain view doctrine; the district court denied the motion. Wells also moved to dismiss the indictment on the ground that § 922(g) is unconstitutional under *United States v. Lopez,* ── U.S. ──, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The district court denied this motion as well. Wells then entered a conditional plea of guilty to violating § 922(g).

### II.

Ordinarily, government agents may seize only items that are "particularly describ[ed]" in a warrant issued upon probable cause. U.S. Const. amend. IV. It is undisputed that the warrant permitting the search of Wells' apartment did not specify firearms among the items to be seized as evidence of bank fraud. Thus, to be proper the seizure must satisfy an exception to the warrant requirement. *See Horton v. California,* 496 U.S. 128, 133–34, 110 S.Ct. 2301, 2305–07, 110 L.Ed.2d 112 (1990). The Government maintains that the seizure was proper under the plain view doctrine.

 Three predicate showings are required in order to justify a warrantless seizure under the plain view doctrine. First, "the seizing officer [must] be lawfully present at the place from which the evidence can be plainly viewed. Second, the officer must

have a lawful right of access to the object itself. And [third], the object's incriminating character must ... be immediately apparent." *United States v. Legg*, 18 F.3d 240, 242 (4th Cir.) (third alteration in original) (citations and internal quotation marks omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 2761, 129 L.Ed.2d 876 (1994).

Although Wells concedes that the first predicate was met because the agents were acting pursuant to a properly issued search warrant and, thus, were lawfully present in his apartment, he asserts that neither the second nor third conditions for a proper plain view seizure were present. We disagree. The agents were lawfully searching Wells' apartment pursuant to a warrant, and the weapon was located in plain view in a place where items that were described in the warrant reasonably could have been found. *See Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987) ("[T]he scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found.") (internal quotation marks omitted). Accordingly, the agents possessed a lawful right of access to the weapon. Furthermore, the evidence from the prior criminal records review indicating that Wells had a previous felony conviction was sufficient to provide probable cause to believe that the firearm constituted evidence of a § 922(g) offense. *See United States v. Smith*, 899 F.2d 116, 118 (1st Cir.1990); *United States v. Robinson*, 756 F.2d 56, 60 (8th Cir.1985). And, although the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure. *United States v. Laughman*, 618 F.2d 1067, 1072 n. 3 (4th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980);

*cf. United States v. Hensley*, 469 U.S. 221, 231–33, 105 S.Ct. 675, 681–83, 83 L.Ed.2d 604 (1985) (holding that admissibility of evidence uncovered during an investigatory stop made in reliance on a police bulletin turns on knowledge of the officers who issued the bulletin, rather than on knowledge of the detaining officers); *United States v. Gaither*, 527 F.2d 456, 458 (4th Cir.1975) (discussing probable cause for arrest and holding "that probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest") (internal quotation marks omitted), *cert. denied*, 425 U.S. 952, 96 S.Ct. 1728, 48 L.Ed.2d 196 (1976). As a result, the incriminating nature of the firearm was immediately apparent. Thus, the seizure of the firearm was proper under the plain view doctrine.*

### III.

Relying on *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Wells next challenges the constitutionality of 18 U.S.C.A. § 922(g), asserting that the enactment of the statute exceeded Congress' Commerce Clause authority. In *Lopez*, the Supreme Court held that Congress unconstitutionally exceeded its power under the Commerce Clause, U.S. Const., art. I, § 8, cl. 3, by enacting the Gun–Free School Zones Act of 1990, 18 U.S.C.A. § 922(q) (West Supp.1996), making it a federal offense to possess a firearm in a school zone. *Lopez*, —— U.S. at ——, 115 S.Ct. at 1626. The Court found that the activity regulated by the statute did not come within the power of Congress to regulate activities having a substantial affect on interstate commerce, observing that § 922(q) "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at —— —— ——, 115 S.Ct. at 1630–31. Moreover, the Court relied on the fact that " § 922(q) con-

---

* Because mere possession of a firearm is a presumptively legal activity, knowledge of Wells' status as a felon was necessary to make the incriminating nature of the firearm immediately apparent in these circumstances. The present situation, however, is distinguishable from one in which a weapon is seized as evidence of a violation of 18 U.S.C.A. § 924(c) (West Supp.1996).

If a firearm is seized as evidence that it was used or carried during or in relation to a crime of violence or a drug trafficking crime, the incriminating nature of the object presumably would be immediately apparent based on the evidence of the underlying violent or drug-trafficking crime without knowledge that the possessor is a convicted felon.

tains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at ——, 115 S.Ct. at 1631. As a result, in order to obtain a conviction under the Gun–Free School Zones Act, the Government was not required to demonstrate that a criminal defendant's "possession of the firearm [had a] concrete tie to interstate commerce." *Id.* at ——, 115 S.Ct. at 1634.

 *Lopez,* however, does not compel the conclusion that Wells seeks. Unlike the statute at issue in *Lopez,* § 922(g) expressly requires the Government to prove the firearm was "ship[ped] or transport[ed] in interstate or foreign commerce"; was "possess[ed] in or affect[ed] commerce"; or was received after having "been shipped or transported in interstate or foreign commerce." 18 U.S.C.A. § 922(g). The existence of this jurisdictional element, requiring the Government to show that a nexus exists between the firearm and interstate commerce to obtain a conviction under § 922(g), distinguishes *Lopez* and satisfies the minimal nexus required for the Commerce Clause. *See Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977) (finding predecessor felon-in-possession statute within the bounds of the Commerce Clause); *United States v. Presley,* 52 F.3d 64, 67 (4th Cir.) (holding pre-*Lopez* that § 922(g) "does not violate the Commerce Clause because sufficient nexus exists between the harm of firearms and interstate concerns"), *cert. denied,* —— U.S. ——, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995). This holding is in accord with the decisions of the other circuit courts of appeals that have addressed the constitutionality of § 922(g) under the Commerce Clause after *Lopez. See, e.g., United States v. Gateward,* 84 F.3d 670, 671–72 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 268, 136 L.Ed.2d 192 (1996); *United States v. Abernathy,* 83 F.3d 17, 20 (1st Cir.1996); *United States v. Spires,* 79 F.3d 464, 466 (5th Cir.1996); *United States v. Turner,* 77 F.3d 887, 889 (6th Cir.1996); *United States v. McAllister,* 77 F.3d 387, 390 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 262, 136 L.Ed.2d 187 (1996); *United States v. Sorrentino,* 72 F.3d 294, 296–97

(2d Cir.1995); *United States v. Bell,* 70 F.3d 495, 497–98 (7th Cir.1995); *United States v. Bolton,* 68 F.3d 396, 400 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Shelton,* 66 F.3d 991, 992 (8th Cir.1995) (per curiam), *cert. denied,* —— U.S. ——, 116 S.Ct. 1364, 134 L.Ed.2d 530 (1996); *United States v. Hanna,* 55 F.3d 1456, 1461–62 & n. 2 (9th Cir.1995).

## IV.

We have reviewed Wells' remaining arguments and conclude that they are without merit. Therefore, we affirm his conviction and sentence.

*AFFIRMED.*